and we move to the uh fifth case this morning or this afternoon uh United States v. Love. Okay Mr. Brown you may proceed. Thank you your honor. May it please the court my name is attorney Russell Brown. I represent Mr. Bryant Love in this matter. Due to the time constraints respectfully I'm going to rely upon the brief for most of the arguments. I'm going to focus our time here on the application of 2k 2.1 which is a four-point enhancement for a firearm in connection with another felony and also uh the the government's cross appeal with respect to the Indiana state conviction for battery and whether or not that is a predicate offense under the ACCA. With regards to the application of 2k 2.1 again the four-point enhancement the sentencing guidelines indicate that the defendant used or possessed any firearm and four points. Application notes states that it applies if a firearm is found in close proximity to drugs drug manufacturing materials or drug paraphernalia. The application Mr. Love contends that the district court erred in its application of this four-point enhancements for two main reasons. One it relied upon inaccurate information and or speculation in fine and making its finding. Due process requires that the sentencing determinations made be made upon reliable evidence rather than speculation or unfounded allegations. This court uh United States versus Bradley of 2010. In order for the defendant to be successful on a claim that the district court violated the due process on relying upon inaccurate information the defendant must show that the information in the sentencing court wasn't accurate. That's United States for the Oliver 7th circuit of 2014 and that the inaccurate information must be relied upon by the district court at United States first Chapman 7th circuit 2015. So let's start with the inaccurate information. The district court cited in its uh in its rulings of applying this four-point enhancement that the size of the residence of Mr. Love's residence was small. In quotes it appears to be very small. This reliance is inaccurate in that it is a two-story three-bedroom apartment slash townhome. The reliance upon the district court's reliance upon it appears to be very small was a not to scale drawing that was admitted by the government that was uh created by um task force agent uh booty who was a special agent uh assigned to this case. There was no evidence of any square footage or actual size of the rooms of the residence and task force agent uh Goody admitted in his testimony that the drugs were found 15 feet from the guns was speculation. He never did any um measurements whatsoever with regards to how far the distance between the guns and the the drugs. Additionally something to do with the size of the house. It does your honor and and again we believe that that is important for the close proximity of where the guns were found to where the drugs were found and whether or not this enhancement applies. The size of the house. When you talk about the size of the house and that sort of thing so much depends on the location. You know if it's in some cluttered but if it's in a really nice place that is big houses around it and another thing that changes the value doesn't it respectfully your honor there was no evidence that was submitted uh in the in the district court did not rely upon any uh location of the residence itself of the neighborhood or anything like that um again and but you're talking about how small the house is I assume that means it's not very valuable and whatever you're trying to say judge respectfully it's it's regards to the size of the house is whether or not it's in close proximity. For example uh this court in Meese talked about uh gun being in close proximity that was found in Meese because it was underneath the uh the defendant's bed um and was readily available uh to the defendant in that case in case there was some type of a home invasion. Um so I so I do believe that it is relevant the size of the residence in and of itself is a relevant determination uh of determining whether or not the gun was in or the guns were in close proximity to the drugs. Here it's 15 feet away right? Your honor respectfully that's complete speculation and and the and the uh the agent. Is there any other speculation about where the how far it was did you offer any testimony otherwise? No your honor uh there was no there was no other testimony uh but the agent did uh admit in his cross-examination that the 15 feet was speculation. Speculation or estimation? I'm sorry did he say it was speculation? Yes your honor he specifically quoted speculation. Another another part of the inaccurate information that the district court relied upon was a prior home invasion. Uh the agent relied upon or testified about a prior police report from the East Chicago Police Department that there had been a prior home invasion and in that prior home invasion the invaders were asking for drugs and guns. It is extremely important to note that that prior report that was relied upon by a task force officer was indicated in that report that that was the first floor apartment was where the the the apartment that was uh searched by the government and that Mr. Love uh resided in was the second floor apartment not the first. Uh the district court specifically relied upon that in finding um of the enhancement. Um again Mr. Brown? Yes your honor. Is it in dispute that the drugs and the guns whatever the distances were in adjoining rooms? It is not in dispute your honor that they were in adjoining rooms. The the drugs were found in a kitchen and the guns were found in a hutch in a dining room. Uh there is there is there is some dispute excuse me I'm sorry judge go ahead. No you go ahead I'm sorry. Uh um there is some dispute of whether or not the adjoining rooms had a door. Um there was a doorway that separated the two rooms uh officer Goody uh special agent Goody did not recall whether or not there was an actual door. Uh Mr. Love contends that looking at government's exhibit three you can you can see that there is a door albeit it was open but there is a door that separated uh the kitchen from the um from the dining room. I I see that my time is getting getting limited. I'd like to move on to uh the Indiana battery conviction uh that the government's uh argument is that it that the court district court erred in finding that the Indiana battery conviction was not a predicate offense under the ACCA. And predominantly the government relies upon the United States Supreme Court case in Stokely a 2019 case. And to make to make this um they they make a distinction that for some reason Stokely and the and the um reasoning behind Stokely somehow obligates uh this court's long-standing uh precedent decided in Flores decided in Joseph J Johnson in 2014 um and and also those relied upon in United States v Duncan and Seventh Circuit of 2016 that somehow Stokely that those cases are no longer good law and this court should not uh follow those cases. But in Stokely I think it's very important to talk about with uh Justice Thomas cited to Curtis Johnson the Supreme Court case in 2010 cited to Curtis Johnson when talking about the definition of physical force. And when you go to Curtis Johnson Supreme Court of 2010 when it's talking about physical force and the definition of physical force the United States Supreme Court relied upon this court's holding in Flores and this court's definition of physical force in Flores. So in fact Stokely didn't abrogate any prior case law of the Seventh Circuit. It actually affirmed it uh in in a roundabout way through its own holding in Johnson, Curtis Johnson, but it did in fact affirm the Flores reasoning and the Flores definition of physical force. Therefore the the decision of whether or not an Indiana battery conviction is a pretty uh is a is a uh violent felony for a predicate of the ACCA has already been determined by this court several times. The only reason why this particular battery conviction is a felony is not because of the actus rex, not because the actual touching, it's because of the status of the victim. The status of the victim was a uh I see that my time is up. Just finish your talk. Thank you. The status of the victim in this particular case was a police officer and under the Indiana statute, the Indiana battery conviction, a police officer touching or a battery on a police officer is elevated to a level uh class d felony at this time um but it has absolutely nothing to do with the amount of injury uh sustained by that officer. It's just the mere status of that officer or of that victim. Thank you. Respectfully we uh asked that the uh that the courtroom uh reverse and for a new sentencing hearing particularly on the um uh elements of whether or not the four point enhancement should apply. Thank you. Thank you. Mr. Holler. Mr. Holler. Good morning your honors uh and may it please the court. I'm going to begin with the uh battery issue because if the court rules in the government's favor on that issue it does not to reach Mr. Brown's uh other issue. An Indiana class d felony battery resulting in bodily injury is a violent felony. Taken together the Supreme Court's decision in Stokely and this court's decision in Douglas compel that conclusion. Uh to be clear the Indiana statute that is a felony offense uh makes it a crime to knowingly or intentionally touch another person in a rude insolent or angry manner resulting in bodily injury. Uh under Stokeling a defendant only needs to use force capable of causing physical pain or injury. In this court's decision in Douglas held that a statute identical to this one except that it resulted in serious bodily injury uh was a violent felony. The court held that a knowing touching that actually causes injury necessarily was capable of causing that injury. Uh the only distinction between these two statutes is the degree of injury but Stokeling made clear that that is not an appropriate dividing line. Force can be capable of causing injury even if the injury is unintended or unlikely. Uh I would disagree with my opponent that somehow Stokeling reaffirms uh Flores in any way shape or form. In fact if one goes back and looks at the briefs that were filed in the Supreme Court in the Stokeling case Mr. Stokeling himself relied heavily on the very argument uh that my opponent is making and relied on Flores to say that the standard should be the Flores standard. The Flores standard to review was that the uh injury or excuse me that the force be intended to cause or likely to cause bodily injury. Uh and on page 554 of Stokeling the Supreme Court explicitly rejected that standard and instead reaffirmed Johnson and said no it only has to be capable of causing bodily injury. Any force that actually causes bodily injury is in fact capable of causing bodily injury. The 11th circuit recognized just that fact uh in its Colon decision and in fact in doing so said Flores is no longer good law. Um the 6th circuit as well uh albeit in an unpublished decision essentially held the exact same thing in the Mendez case. So um and this court has recognized in the context of Indiana or excuse me of Illinois and Wisconsin's and Minnesota's battery statutes that those very similar statutes all qualify even when only bodily injury is at issue. There's no there's no uh conceivable distinction in the case law at this point between serious bodily injury and bodily injury. Uh and in fact the Supreme Court in Stokeling said um you know quite to the contrary um page 554 we declined to impose another interminable line drawing exercise on the lower courts uh asking the courts to decide whether serious bodily injury or Indiana actually has an intermediate moderate bodily injury standard um and the court isn't getting into those line drawings. The distinction is between uh touching near touching which the Curtis Johnson 2010 Supreme Court decision says does not count uh and touching that results in injury or threatens injury which is why robbery statutes qualify. Um and to the extent that the uh battery result that the district court erred in concluding that the battery statute did not count uh the defendant is an armed career criminal unless his uh Illinois robbery uh rights were restored. Um but this court's precedents such as Gantt, Foster, and Shields make clear that the burden is on the defendant to establish that his rights were restored and the defendant the district court did correctly conclude that the defendant came nowhere near um establishing that his rights were restored. Uh the the evidence was clear that he would not have been mailed any kind of letter like the defendant in Buchmeier was uh and the defendant's own sort of I would make it a claim except he didn't even provide any testimony or any evidence uh like was found insufficient in other cases. It was essentially just an argument of well maybe somebody told him his rights were restored that's not enough to meet this court standards under Buchmeier. So because of that uh the defendant had three qualifiers and the defendant needed to be sentenced as an armed career criminal he would be sentenced uh in that case under a different guideline and the question of whether or not um under 2k 2.1 uh these drugs were found in uh whether the guns were were possessed in connection with drug trafficking uh actually becomes moot and the court need not reach that question. Um to the extent the uh the court did need to reach that question or didn't want to reach that question though for some reason uh there was no clear error by the district court. Uh I agree with you Judge Kamey that um although um although my opponent did ask that you know well aren't you just speculating about the distance it was clear from from the officer's testimony he was making an estimate based on just as we all do we don't get out of tape measure we just we just make an estimate district court could have found that wasn't enough if he wanted to but he didn't have to uh as Judge Flom pointed out the drugs were in a room adjacent to the the dining room the drugs were in the kitchen there was one kitchen this wasn't a mansion uh the drugs were in the kitchen the guns were in the dining room the drug money uh some of which included by money in this case was in a closet off of the dining room um so all of these things were in close proximity and even beyond that there was definitely evidence that these uh items were connected. Mr. um Love was seen leaving the apartment to engage in drug trafficking there was the report from Ms. Matthews to be sure Ms. Matthews and Mr. Love would not let the officers actually come into the apartment so they couldn't tell for sure whether it was the first floor or the second floor apartment that was being robbed uh but there was more than enough evidence in connection here to the extent the court needs to reach that machine. Um if the court has no questions uh I'm happy to get back uh the balance of my time we would ask that uh just like my opponent we would ask that the uh judgment be uh be reversed the sentence be vacated uh but we would ask for it to be remanded with instructions to the district court to uh impose the uh armed criminal enhancement and to impose a sentence no less than the mandatory minimum 15 years uh that applies under the statute. Thank you. Thank you. Thank you Mr. Haller. Thank you Mr. Brown as well.